Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
Facsimile:   (406) 551-6919
E-mail:        matthewmonforton@yahoo.com

Attorney for Plaintiff Dan Cox

# UNITED STATES DISTRICT COURT
# DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| DAN COX, on behalf of himself and all others similarly situated,<br><br>   Plaintiffs,<br><br>   v.<br><br>EDWARD McLEAN, in his official capacity as Chair of Montana's Judicial Standards Commission; BLAIR JONES, in his official capacity as a member of Montana's Judicial Standards Commission; VICTOR VALGENTI, in his official capacity as a member of Montana's Judicial Standards Commission; JOHN MURPHY, in his official capacity as a member of Montana's Judicial Standards Commission; SUE SCHLEIF, in her official capacity as a member of Montana's Judicial Standards Commission;<br><br>   Defendants. | Case No. 9:14-cv-00199-DLC<br><br>**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

| | | |
|---|---|---|
| **TABLE OF AUTHORITIES**……………………………………….. | | iii. |
| **INTRODUCTION**……………………………………………….. | | 1 |
| **STATEMENT OF FACTS**…………………………………………. | | 1 |
| I | MONTANA LAW PERTAINING TO COMMISSION PROCEEDINGS…………………………………………… | 1 |
| II | THE COMMISSION'S THREAT TO CITE PLAINTIFF COX FOR CONTEMPT………………………………………… | 2 |
| **ARGUMENT**………………………………………………….. | | 5 |
| I | CITING COMPLAINANTS FOR CONTEMPT FOR PUBLISHING THEIR JUDICIAL COMPLAINTS IMPERMISSIBLY BURDENS THEIR FIRST AMENDMENT RIGHTS………………………………………….. | 5 |
| | A  Montana's Prohibition is Unconstitutional as Applied to Cox… | 6 |
| | B  Montana's Prohibition is Substantially Overbroad……………. | 8 |
| II | PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF………… | 11 |
| | A  Cox is Likely to Succeed on the Merits………………………. | 11 |
| | B  Cox Will Suffer Irreparable Harm…………………......... | 11 |
| | C  The Balance of Equities Tips Sharply in Cox's Favor……..… | 12 |
| | D  Enjoining the Commissioners is in the Public Interest………. | 13 |
| **CONCLUSION**……………………………………………… | | 14 |

# TABLE OF AUTHORITIES

**Cases:**

*Bd. of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.*,
    482 U.S. 569 (1987)……………………………………………… 9

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)…………………………………………….. 9

*Citizens United v. FEC*,
    558 U.S. 310 (2010)…………………………………………….. 5, 6

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
    657 F.3d 936 (9th Cir.2011)………………………………………….. 9

*Doe v. Florida Judicial Qualifications Commission*,
    748 F.Supp. 1520 (S.D.Fla.1990)……………………………….. 7

*Joelner v. Washington Park*,
    378 F.3d 613 (7th Cir. 2004)…………………………………… 13

*Kamasinski v. Judicial Review Council*,
    44 F.3d 106 (2d Cir.1994)……………………………………. 7, 8

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir.2009)………………………………… 12

*Lind v. Grimmer*,
    30 F.3d 1115 (9th Cir.1994)………………………………….. 6, 8, 10

*Monterey Mechanical Co v. Wilson*,
    125 F.3d 702 (9th Cir.1997)……………………………………. 12

*Paramount Land Co. LP v. California Pistachio Comm'n*,
    491 F.3d 1003 (9th Cir.2007)………………………………….. 13

*Roe v. City of San Diego*,
    356 F.3d 1108 (9th Cir.2004)………………………………….. 5-6

*Sanders County Rep. Cent. Comm. v. Bullock*,
    698 F.3d 741 (9th Cir.2012)……………………………………… 6, 11

*Schaumburg v. Citizens for a Better Environment*,
    444 U.S. 620 (1980)……………………………………………… 9

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009)…………………………………… 12

*Thalheimer v. City of San Diego*,
    645 F.3d 1109 (9th Cir. 2011)…………………………………… 12, 13

## **Statutes & Rules:**

MONTANA CONSTITUTION

    Mont. Const. art. VII, § 11……………………………………… 1

MONTANA CODE ANNOTATED

    § 3-1-1105………………………………………………………… 2, 8
    § 3-1-1107………………………………………………………… 2, 8
    § 3-1-1121………………………………………………………… 2, 8
    § 3-1-1126………………………………………………………… 2, 8
    § 45-7-309………………………………………………………… 2

## INTRODUCTION

Plaintiff Daniel Cox filed a complaint last year with the Montana Judicial Standards Commission (Commission) in response to acts of misconduct by an elected state judge.  The Commission dismissed his complaint weeks later.

Cox desires to publish his complaint and the Commission's letter dismissing it as part of an effort to unseat the judge and expose what he believes is the Commission's ineffectiveness.  The Commission has threatened to cite him for contempt if he does, an action that could result in Cox being jailed for six months, thereby violating Cox's First Amendment rights without advancing any compelling state interests.  Because Cox is likely to succeed on the merits, and because the Commission's threats are irreparably harming Cox, a preliminary injunction is both necessary and appropriate.

## **STATEMENT OF FACTS**

### I   MONTANA LAW PERTAINING TO COMMISSION PROCEEDINGS

The Montana Constitution mandates the establishment of the Commission to investigate complaints alleging misconduct committed by judges.  Mont. Const. art. VII, § 11.  The Commission promulgates rules governing its own proceedings.  Mont. Const. art. VII, § 11(1).  All of the Commission's proceedings are confidential except as provided by statute.  Mont. Const. Art. VII, § 11(4).

Pursuant to statute, all papers filed with the Commission and all proceedings held before it are confidential unless (1) the Commission finds the complaint is supported by good cause, (2) the Montana Supreme Court holds a hearing in response to the complaint or (3) the judge named in the complaint waives his or her right to confidentiality. § 3-1-1105, MCA; § 3-1-1107(2), MCA; § 3-1-1121 to § 3-1-1126, MCA. Additionally, the Commission has promulgated rules governing the confidentiality of its files and proceedings, including the following:

> Every witness in every proceeding under these Rules shall be sworn to tell the truth and not to disclose the existence of the proceeding or the identity of the judge until the proceedings are no longer confidential under these rules. Violation of the oath shall be an act of contempt and punishable as such.

Commission Rule 7(c)[1]. A defendant convicted of contempt under Montana law is subject to a fine of $500 and six months in jail. § 45-7-309(2), MCA.

II    THE COMMISSION'S THREAT TO CITE PLAINTIFF COX
       FOR CONTEMPT

Plaintiff Cox has been an active member of the Montana Libertarian Party and served as the party's nominee for election to the United States Senate in 2012. (Verif. Comp., ¶ 16.) Cox became aware of actions taken by a judge sitting on the

---

[1] Plaintiff has filed separately a request to take judicial notice of the Commission's rules, a copy of which can be found at:
<http://courts.mt.gov/content/library/forms/judges_complaint/jsc.pdf>

Montana District Court that violated several canons of the Montana Judicial Code. (Verif. Comp., ¶ 17.) These included, *inter alia*, unlawful, ex parte communications with a party to an action pending in the judge's court and a lack of impartiality and fairness concerning rulings made in the action. (Verif. Comp., ¶ 17.)

Based upon his knowledge of these activities, Cox filed a complaint with the Commission on or about June 1, 2013. (Verif. Comp., ¶ 18.) The complaint contained detailed allegations concerning the acts of misconduct Cox had witnessed. (Verif. Comp., ¶ 19.)

The Commission responded to Cox in a letter dated July 8, 2013, which stated that it would conduct a "preliminary review" of Cox's complaint. (Verif. Comp., ¶ 20-21.) The letter also included the following statement:

> The Commission reminds you that all matters before the Judicial Standards Commission, prior to the filing of formal charges of unethical conduct in the Montana Supreme Court, are confidential. Any disclosure by you concerning the fact that you have filed a complaint with the Judicial Standards Commission is prohibited.

(Verif. Comp., ¶ 22.)

The Commission sent another letter to Cox dated August 26, 2013. (Verif. Comp., ¶ 23.) In that letter, the Commission informed Plaintiff Cox that the complaint had been "reviewed, discussed and evaluated by the members of the Commission present at the meeting," and that "[a] decision was reached that no

3

ethical violation or professional misconduct in breach of the Canons of Judicial

Ethics was shown." (Verif. Comp., ¶ 24.) The Commission also stated in its letter

of August 2013 that "[a]ll matters before the Commission, prior to the filing of a

formal complaint against a judge with the Montana Supreme Court, are required to

remain confidential." (Verif. Comp., ¶ 25.) The Commission did not state in the

letter that it made any effort to actually investigate any of the charges made by

Plaintiff Cox against the judge. (Verif. Comp., ¶ 26.)

On March 18, 2014, Cox's attorney sent a letter to all five members of the

Commission asking if the Commission intended cite Plaintiff Cox for contempt if

he were to publish his judicial complaint and the letter dismissing the complaint.

(Verif. Comp., ¶ 28.) The Commission responded in a letter dated May 20, 2014.

(Verif. Comp., ¶ 29.) The letter included the following statement:

> The Rules of the Judicial Standards Commission are very
> specific. All proceedings before the Commission are
> confidential unless the judge waives the confidentiality. If
> the complainant were to breach the confidentiality of the
> complaint, the Commission would cite the individual for
> contempt and appoint a district court judge to conduct the
> contempt hearing on the individual who violated the
> confidentiality provision.

(Verif. Comp., ¶ 30.)

Cox believes that the judge named in the judicial complaint and the

Commission have acted unlawfully. (Verif. Comp., ¶ 31.) Cox intends to seek a

recall of the judge named in the complaint as well as oppose the judge if he/she seeks re-election. (Verif. Comp., ¶ 32.)

Cox also desires to speak out about what he believes was a deliberate failure by the Commission to investigate the merits of his complaint. (Verif. Comp., ¶ 33.) He desires to publish the complaint and the Commission's letter to him informing him of its dismissal of the complaint as part of these efforts. (Verif. Comp., ¶ 34.) He will not do so, however, while there remains a threat of a contempt citation. (Verif. Comp., ¶ 35.)

## ARGUMENT

I  CITING COMPLAINANTS FOR CONTEMPT FOR PUBLISHING THEIR JUDICIAL COMPLAINTS IMPERMISSIBLY BURDENS THEIR FIRST AMENDMENT RIGHTS

A.  <u>Montana's Prohibition Is Unconstitutional As Applied to Cox</u>

Cox desires to publish a copy of a document he prepared and filed with a government agency, a document containing his criticisms of an elected judge. (Verif. Comp., ¶ 34.) This speech enjoys the highest constitutional protection because "[i]f the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizen, for simply engaging in political speech." *Citizens United v. FEC*, 558 U.S. 310, 349 (2010); *Roe v. City of San*

*Diego*, 356 F.3d 1108 (9th Cir.2004) (speech involving public policy "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection").

State laws suppressing speech concerning inquiries into judicial misconduct are content-based restrictions requiring strict scrutiny by this Court. *Lind v. Grimmer*, 30 F.3d 1115, 1118 n.1 (9th Cir.1994). The Government therefore has the burden of proving that these laws "further[ ] a compelling interest and [are] narrowly tailored to achieve that interest." *Citizens United,* 558 U.S. at 340.

The Ninth Circuit's decision in *Lind* concerned a Hawaii statute prohibiting publication of complaints filed with a state agency regarding alleged campaign finance violations. *Lind,* 30 F.3d at 1117. In holding that the First Amendment permitted publication by complainants of their campaign finance complaints, the court cited several similar cases outside the Ninth Circuit involving judicial review boards. *Id.,* 1121, n.5. In one of those cases, the Second Circuit held the following:

> It bears repeating…that the ban on disclosure is constitutional only so long as [Connecticut's Judicial Review Council] acts in its investigatory capacity. Once the JRC has determined whether or not there is probable cause that judicial misconduct has occurred, even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct.

*Kamasinski v. Judicial Review Council*, 44 F.3d 106, 112 (2d Cir.1994); see also

*Doe v. Florida Judicial Qualifications Commission*, 748 F.Supp. 1520, 1526-29 (S.D.Fla.1990) (states have no compelling interest in preventing disclosure of complaints against judges).

This case presents the same constitutional violations present in *Lind* and *Kamasinski*. Aside from statutory exceptions not present in this case, Montana law prohibits, on pain of contempt, a complainant from publishing his or her own complaint filed with the Commission. Cox desires to publish such a complaint containing allegations of misconduct by an elected Montana judge in order to expose this judge's misconduct and to further his goal of removing the judge via a recall election. (Verif. Comp., ¶ 31-32.) He also desires to publish the complaint in order to criticize what he considers to be the deliberate indifference of the Commission towards complainants. (Verif. Comp., ¶ 33.)

Thus, Cox desires to engage in core political speech. Given that the Commission dismissed his complaint nine months ago, Montana has no interests that justify the continued suppression of Cox's speech. Yet, Commission members have threatened to cite him for contempt if he publishes his complaint. (Verif. Comp., ¶ 30.) As applied to Cox, Montana law allowing for a contempt citation for publishing judicial complaints constitutes an unconstitutional abridgment of his First Amendment rights.

B. Montana's Prohibition is Substantially Overbroad

Statutes that are substantially overbroad and restrict wide swathes of protected speech are subject to challenge regardless of whether the speech of the party challenging the statute might be constitutionally proscribed by a more narrow statute. *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). The overbreadth doctrine is an exception to the usual rules of standing and prevents the chilling effect that overbroad statutes may have on parties not before the court. *Bd. of Airport Comm'rs of Los Angeles v. Jews for Jesus, Inc.,* 482 U.S. 569, 575-76 (1987). Thus, in "First Amendment contexts, the courts are inclined to disregard the normal rule against permitting one whose conduct may validly be prohibited to challenge the proscription as it applies to others because of the possibility that protected speech or associative activities may be inhibited by the overly broad reach of the statute." *Schaumburg v. Citizens For A Better Environment*, 444 U.S. 620, 634 (1980). When making an overbredth claim, a plaintiff "need not necessarily introduce admissible evidence of overbreadth, but generally must at least describe the instances of arguable overbreadth of the contested law." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 944 (9th Cir.2011)(en banc).

The overbreadth doctrine allows Cox to assert that Montana's confidentiality laws are unconstitutional not only as applied to him (something he has

8

demonstrated in the previous section of this Brief), but also as applied to others. These laws suffer from the same overbreadth problems identified by the *Lind* court:

> Not only does [the statute] prohibit complainants from divulging the fact that they have filed a complaint, but it also prohibits third parties, who are strangers to the Commission's investigation, from divulging anything that they might lawfully learn about an investigation, both before and after the Commission makes a probable cause determination. This prohibition is patently unconstitutional. If the Commission makes a finding of no probable cause, the statute prohibits those same third parties, should they legally acquire a portion of the record of the Commission's proceedings, from releasing it. This, too, is unconstitutional. [The statute] also prohibits all persons appearing before the Commission, not just the complainant, from divulging both the fact that a complaint has been filed and what they told the Commission—both before and after the Commission makes a probable cause determination.

*Lind*, 30 F.3d at 1122-23 (citations omitted).

As stated previously, *Lind* involved the proceedings of Hawaii's campaign finance commission rather than those of a judicial review board. But the paragraph quoted above could just as easily apply to the restrictions that Montana law imposes upon persons swept up in Commission proceedings. The Ninth Circuit's reasoning in *Lind* applies therefore with equal force to this case. Like the substantial overbreadth present in *Lind*, the substantial overbreadth of Montana laws governing the confidentiality of Commission proceedings renders these laws unconstitutional.

9

## II PLAINTIFF COX IS ENTITLED TO INJUNCTIVE RELIEF

To obtain injunctive relief, a plaintiff must show (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm if injunctive relief is not granted, (3) the balance of equities tips in his or her favor, and (4) an injunction is in the public interest. *Sanders County Rep. Cent. Comm. v. Bullock*, 698 F.3d 741, 744 (9th Cir.2012) (citations omitted). As shown below, Cox can satisfy each of these requirements.

### A Cox is Likely to Succeed on the Merits

Cox has previously demonstrated that Montana's prohibition against publishing complaints subsequent to being dismissed unquestionably violates the First Amendment.[2] He is therefore likely to succeed on the merits.

### B Cox Will Suffer Irreparable Harm

Ongoing or future constitutional violations by a defendant satisfy the irreparable harm requirement because "unlike monetary injuries, constitutional violations cannot be adequately remedied through damages." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009); *Monterey Mechanical Co v. Wilson*,

---

[2] See Part I, *supra*, pp. 5-10.

125 F.3d 702, 715 (9th Cir.1997) ("an alleged constitutional infringement will often alone constitute irreparable harm"). Moreover, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente,* 584 F.3d 1196, 1208 (9th Cir.2009) (citations omitted). Such "harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as timing is of the essence in politics and [a] delay of even a day or two may be intolerable." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011).

As stated previously, Montana's prohibition on publishing judicial complaints after the Commission has dismissed them violates Cox's rights under the First Amendment.³ This deprivation will continue until this Court grants relief, relief that cannot be obtained from an award of monetary damages. This factor thus weighs in favor of granting injunctive relief.

C  The Balance of Equities Tips Sharply in Cox's Favor

When First Amendment rights are at stake, the balance of hardships is presumed to tip toward plaintiffs except when they cannot establish their likelihood of success on the merits. *Paramount Land Co. LP v. California Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir.2007). Because Cox has established likely

---

³ See Part I, *supra*, pp. 5-10.

merits success on its First Amendment claims, the Court should find the balance of hardships tips in his favor for this reason alone.

Moreover, there is no pending investigation concerning the allegations contained in Cox's complaint that could potentially be compromised if he publishes his complaint. Instead, the Commission dismissed the complaint nine months ago. (Verif. Comp., ¶¶ 23-24.)

On the other hand, each day that passes is a day that Cox is denied an opportunity to criticize the government. The balance of equities therefore tips sharply in the Association's favor.

D.  Enjoining the Commission is in the Public Interest

Cox's First Amendment rights are ones that, if protected, will advance the public interest. *Thalheimer*, 645 F.3d at 1129 ("Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles."); *Joelner v. Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) ("it is always in the public interest to protect First Amendment liberties"). This factor therefore favors granting injunctive relief as well.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Daniel Cox respectfully requests that this Court grant his Motion for a Preliminary Injunction to permit him to publish his judicial complaint and dismissal letter.


DATED: July 28, 2014         <u>/s/ Matthew G. Monforton</u>
                                       Matthew G. Monforton

                                         Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE PURSUANT TO L. R. 7.1(d)(2)(E)

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 2812 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.


DATED: July 28, 2014          /s/ Matthew G. Monforton
                              Matthew G. Monforton

                              Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY this 28th day of July, 2014, that a copy of the foregoing will be delivered this day to the following via regular mail and email.

TIMOTHY FOX
Montana Attorney General
MICHAEL G. BLACK
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
mblack2@mt.gov


DATED: July 28, 2014          /s/ Matthew G. Monforton
                              Matthew G. Monforton

                              Attorney for Plaintiff