IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DAN COX, on behalf of himself and all others similarly situated, | CV 14–199–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| EDWARD McLEAN, in his official capacity as Chair of Montana's Judicial Standards Commission; BLAIR JONES, in his official capacity as a member of Montana's Judicial Standards Commission; VICTOR VALGENTI, in his official capacity as a member of Montana's Judicial Standards Commission; JOHN MURPHY, in his official capacity asa member of Montana's Judicial Standards Commission; SUE SCHLEIF, in her official capacity as a member of Montana's Judicial Standards Commission, | |
| Defendants. | |

Before the Court is Plaintiff's motion for preliminary injunction. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons explained, the Court grants the motion.

-1-

## Background

Plaintiff Dan Cox filed this action seeking declaratory and injunctive relief asserting that certain Montana laws that require confidentiality in all Judicial Standards Commission proceedings violate his First Amendment rights under the United States Constitution. Cox filed the instant motion for preliminary injunction seeking to enjoin Defendants from prosecuting him for publishing a complaint he filed with the Judicial Standards Commission and the letter he received from the Commission dismissing that complaint.

In 1972, the citizens of Montana adopted a new Constitution which, among other things, directed the Legislature to create a Judicial Standards Commission to receive and investigate complaints of misconduct filed against Montana judges. Mont Const. Art. VII, § 11(1). The Montana Constitution requires that all of the Commission's proceedings be confidential except as provided by statute. *Id.* at § 11(4). All papers filed with the Commission and all proceedings held before it are confidential unless (1) the Commission finds the complaint is supported by good cause, (2) the Montana Supreme Court holds a hearing in response to the complaint, or (3) the judge named in the complaint waives his or her right to confidentiality. Mont. Code Ann. § 3-1-1105, -1107(2), -1121 to -1126. The Commission is authorized to promulgate its own rules. § 3-1-1105(2). One of the

rules provides for confidentiality of the proceedings before the Commission:

> Every witness in every proceeding under these Rules shall be sworn to tell the truth and not to disclose the existence of the proceeding or the identity of the judge until the proceedings are no longer confidential under these rules. Violation of the oath shall be an act of contempt and punishable as such.

Rule 7(c), Rules of Judicial Standards Commission. If, after an initial investigation, the Commission determines that a complaint is not supported by good cause, then the Commission dismisses the complaint, terminates the inquiry, and informs the complainant. Rule 10(e). The requirement of confidentiality remains in place even after the Commission dismisses the complaint and terminates the inquiry. *Id.*

Plaintiff Cox is an active member of the Montana Libertarian Party and served as the party's nominee for election to the United States Senate in 2012. Cox became aware of actions allegedly taken by a Montana state district court judge that Cox believed violated several canons of the Montana Judicial Code, which caused Cox to file a complaint with the Commission against the judge in early June, 2013. The Commission determined that no ethical violation or professional misconduct in violation of the Canons of Judicial Ethics had occurred, and dismissed the complaint and informed Cox of its decision by letter

in August 2013.  In the letter, the Commission reminded Cox of the confidentiality requirements.  Cox's attorney then sent a letter to the Commission asking if the Commission intended to subject Cox to contempt proceedings if Cox published his complaint and the letter informing him of the complaint's dismissal.  The Commission responded that it would appoint a district court judge to conduct a contempt hearing if Cox breached the confidentiality of the complaint.

Cox intends to seek a recall of the judge named in the complaint as well as oppose the judge if he/she seeks re-election, and he desires to publish the complaint and the Commission's letter to him dismissing the complaint as part of his election efforts.  However, he will not do so while there remains a threat of a contempt citation.  Cox does not seek internal Commission documents such as the Commission's correspondence with the judge named in the complaint, the identity of witnesses, or transcripts of the proceedings.

Cox brings a facial and as applied challenge to the provisions of Montana law requiring confidentiality of Judicial Standards Commission proceedings.  Cox, furthermore, brings the action on behalf of himself and all others similarly situated.  However, his request for a preliminary injunction, which is the subject of this order, is narrower in scope.  Cox seeks only to publish his complaint and the letter he received from the Commission dismissing that complaint.  It is

undisputed that all Commission proceedings relative to Cox's complaint have been completed and that the inquiry relative to the complaint was terminated over a year ago. In other words, Cox is not seeking to publish information concerning an active and ongoing Commission investigation.

## Discussion

A preliminary injunction is an extraordinary remedy never awarded as a matter of right. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). A party seeking a preliminary injunction must establish (1) that it is likely to succeed on the merits of its claims, (2) that it is likely to suffer irreparable harm absent an injunction, (3) that the balance of hardships tips in its favor, and (4) that an injunction is in the public interest. *Id.* at 20. A petitioner, even in a First Amendment case, must make a showing as to all four factors and the test does not simply "collapse into the merits" in First Amendment cases. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir. 2011).

The burden is on the party seeking the injunction to satisfy the *Winter* elements. *Id.* at 1115. But,"in the First Amendment context, [on the merits prong], the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the

restriction." *Id.* at 1116. This is because the government always bears the ultimate burden of justifying its restrictions on speech. *Id.*

## I. Likelihood of Success on Merits

Cox's verified complaint may be treated as an affidavit, and thus may be used as evidence to support an injunction. *Thalheimer*, 645 F.3d at 1116. Cox brings both a facial and as-applied constitutional challenge to the following provisions of Montana law: Montana Constitution Article VII, § 11(4); Montana Code Annotated § 3-1-1105, and Rule 7(c) of the Rules of Judicial Standards Commission. These provisions generally require all proceedings before the Judicial Standards Commission to remain confidential unless an exception applies.

Pursuant to Montana law, Cox may be charged with contempt if he publishes the complaint he filed with the Commission and/or the dismissal letter from the Commission informing him that his complaint has been dismissed, notwithstanding the fact that these proceedings were terminated over one year ago. Rule 7(a),(c). Cox maintains that this violates his right to free speech under the First Amendment and infringes on his right to engage in political speech. Cox wishes to publish the complaint and letter for at least two reasons: (1) to unseat the judge who is the subject of his complaint; and (2) to criticize the Commission for failing to properly investigate his complaint. Again, the Commission's inquiry

into the complaint filed by Cox has long been terminated, yet the restrictions on his speech persist.

The Court concludes that Cox makes a colorable claim that his First Amendment rights have been infringed. Cox wishes to criticize government officials and a government body for political reasons, but he is restricted from doing so by threat of civil or criminal prosecution.[1] Political speech "occupies the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 346 (1995). The Supreme Court has held that "[t]he First Amendment affords the broadest protection to such political expression in order to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Id.* It is clear that Cox has made a colorable claim that his First Amendment rights have been infringed. Because Cox makes a colorable claim that his First Amendment rights have been infringed, the burden shifts to Defendants to justify the restrictions on speech. *Sanders County Republican Cent. Committee v. Bullock*, 698 F.3d 741, 745 (9th

---

[1] Rule 7(c) provides that a person who breaches confidentiality will be deemed to have committed "an act of contempt and [will be] punishable as such." Defendants maintain that Rule 7(c) refers not to the criminal contempt statute, which provides for fines and jail time, but that it "appears the contempt power is simply the general contempt power that all courts inherently possess." (Doc. 15 at 3.) Because Defendants themselves are unsure of what punishments might be available, the Court assumes that either civil or criminal punishments can be imposed. Moreover, even if only civil punishments can be imposed, this would not change the Court's analysis.

Cir. 2012).

The Court must first determine what standard of scrutiny applies to the restrictions on Cox's speech.  Here, Defendants concede that strict scrutiny is the applicable standard.  The challenged laws require confidentiality in Judicial Standards Commission proceedings.  It is clear that the restrictions are content-based.  *Lind v. Grimmer*, 30 F.3d 1115, 1118 (9th Cir. 1994).  Thus, the laws are "presumptively unconstitutional," strict scrutiny applies, and Defendants must prove that the restriction is narrowly tailored to serve a compelling state interest.  *Id.*

The Court concludes that Defendants fail to justify the restrictions on Cox's speech and that Cox is likely to succeed on the merits of his as-applied challenge to the laws.  Defendants identify a variety of state interests that purportedly justify the restriction on Cox's speech including, among others: (1) confidentiality encourages the filing of complaints and provides participants protection against possible judicial recrimination; (2) confidentiality protects judges against unwarranted complaints; (3) confidentiality maintains the confidence in the judiciary by avoiding premature announcement of groundless or frivolous complaints; (4) confidentiality facilitates the Commission's work by allowing judges faced with justified complaints to voluntarily resign or retire.  These are the

same state interests advanced by the losing party in *Landmark Communications v. Virginia*, 435 U.S. 829 (1978), where the United States Supreme Court struck down as unconstitutional a Virginia law which criminally penalized the publishing by third parties of truthful information about proceedings in Virginia's Judicial Inquiry and Review Commission. *Landmark*, 435 U.S. at 845-846. There, the Court assumed these were legitimate state interests, but found that they failed to justify the restrictions on political speech. *Id.* at 841.

Montana, like the Commonwealth of Virginia in the *Landmark* case, has an interest in protecting the reputation of its judges, and in that effort, enhancing the public's perception of the judiciary. However, previous Supreme Court cases have clearly established that injury to official reputation is not a basis for "repressing speech that would otherwise be free." *New York Times Co. v. Sullivan*, 376 U.S. 254, 272-273 (1964). As Mr. Justice Black observed in *Bridges v. California*, 314 U.S. 252, 270-271 (1941): "The assumption that respect for the judiciary can be won by shielding judges from published criticism wrongly appraises the character of American public opinion . . . . [A]n enforced silence, however limited, solely in the name of preserving the dignity of the bench, would probably engender resentment, suspicion, and contempt much more than it would enhance respect." Mr. Justice Frankfurter, in his dissent in *Bridges*, agreed that speech cannot be

punished when the purpose is simply "to protect the court as a mystical entity or the judges as individuals or as anointed priests set apart from the community and spared the criticism to which in a democracy other public servants are exposed." *Id*. at 292.

The reputation of a Montana judge, and the confidentiality of Commission proceedings, serves a legitimate purpose during an ongoing investigation. Complaints can be filed by litigants in the course of legal proceedings solely for the purpose of seeking disqualification of a judge who has issued disagreeable rulings. But again, that is not the case here, which involves a complaint that was summarily dismissed by the Commission over one year ago.

Defendants attempt to distinguish *Landmark*, *Lind*, and other out of circuit cases by arguing that Cox has failed to show a likelihood of success on the merits. Defendants make little attempt to independently meet their burden of proof. Critically, none of the cases cited by Defendants, nor any the Court can find through independent research, provides Defendants with any support for their position that a perpetual ban on Cox from publishing his dismissed complaint and the dismissal letter, is consistent with First Amendment rights. Indeed, the case which appears to provide Defendants with the most promise in defense of their position, *Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d. Cir 1994),

makes absolutely clear that such a perpetual ban violates the First Amendment.

In *Kamasinski*, the Second Circuit Court of Appeals held that a limited ban on disclosure of the fact of filing a complaint with a judicial review board or the fact that testimony was given during such a proceeding was consistent with the First Amendment, but only while an investigation of a complaint was ongoing. *Kamasinski*, 44 F.3d at 111. The Court also upheld a limited ban on disclosing information gleaned through interaction with the judicial review board, while the board proceedings were ongoing. *Id.* The Court, however, stressed that such a ban must have a temporal limitation:

> It bears repeating, however, that the ban on disclosure is constitutional only so long as the [Judicial Review Council] acts in its investigatory capacity. Once the JRC has determined whether or not there is probable cause that judicial misconduct has occurred, even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct.

*Id.* Other courts facing similar challenges have come to the same conclusion. *Lind*, 30 F.3d at 1122-23 ("[W]hile the validity of some of these prohibitions as applied during the pendency of the investigation may be arguable . . . . [o]nce the Commission has made its probable cause determination their application clearly is unconstitutional."); *First Amendment Coalition v. Judicial Inquiry and Review Bd.*, 784 F.2d 467, 478 (3rd Cir. 1986)("when the Board dismisses the charges, its

record will never be filed, and the restraint on the witness will be perpetual. . . .We find no state interest strong enough to justify such a sweeping measure.").

Besides their conclusory assertion, Defendants make no attempt to justify the perpetual ban on Cox from publishing his dismissed complaint and the letter the Commission sent to him over one year ago. The Commission concedes that Cox may freely criticize the judge who is the subject of his complaint, and publicly raise the same issues that formed the substance of his complaint, subject of course to defamation laws, but nevertheless maintains that state interests are served by prohibiting Cox from disclosing the existence of the complaint and the dismissal of it. As noted, even case law cited by Defendants is directly at odds with their position in this regard. Defendants fail to demonstrate that the challenged statute, as applied to Cox, is narrowly tailored to achieve a compelling state interest. Accordingly, the Court concludes that Cox is likely to succeed on the merits of his as-applied challenge.

## II. Irreparable Harm

In the Ninth Circuit, even in First Amendment cases, a petitioner seeking an injunction must make a showing on all four injunction factors. *Thalheimer*, 645 F.3d at 1128. The test does not simply "collapse into the merits" of the First Amendment claim. *Id.*

As already established, Cox has demonstrated a likelihood of success on the merits of his as-applied challenge. Thus, for irreparable harm, Cox relies on the well-established principle that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Moreover, Cox asserts that the harm is "particularly irreparable" here because he seeks to engage in political speech where "timing is of the essence." *Id.*

Defendants primarily argue that Cox has failed to show a likelihood of success on the merits, but the Court has already rejected this argument. Defendants also contend that Cox cannot show irreparable harm because he can already engage in political speech in that he is free to criticize the judge in other ways and publicly disclose the substance of his complaint, just not the complaint itself. But this argument misses the point that Cox desires to criticize the judge and the Commission. Cox believes that the Commission failed to adequately investigate his complaint. Publishing the complaint and the dismissal letter provides Cox an opportunity to demonstrate that the political process is the only way to address his complaint against the judge. Apparently Cox wants to make the case to the voters that because the Judicial Standards Commission will not remove the judge, the electoral process is the only means to accomplish this goal.

Whether such a message will persuade the voters is unclear, but it is political speech nonetheless. Defendants' argument that the fact of filing should be confidential even while the substance of the complaint can be disclosed also undercuts Defendants' purported justification for the restriction in the first place. *See Stilp v. Contino*, 631 F.3d 405, 412 (3rd Cir. 2010).

Cox has demonstrated that his First Amendment freedoms are likely being infringed. The Court concludes that Cox is likely to suffer irreparable harm absent an injunction. *Id.*; *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009).

### III. Balance of Hardships

Cox contends that when First Amendment rights are at stake, "the balance of hardships is presumed to tip" in the plaintiff's favor when the plaintiff establishes a likelihood of success on the merits. (Doc. 4 at 15.) Plaintiff cites *Paramount Land Co. LP v. California Pistachio Comm'n*, 491 F.3d 1003, 1012 (9th Cir. 2007) for this proposition, but as Defendants correctly assert, this case does not support Cox's contention.

Nonetheless, the Court concludes that it may indeed be a valid proposition of law. Notably, in other circuits, the preliminary injunction test in First Amendment cases, does indeed collapse into the merits of the claim. *See,e.g.,*

*Stilp*, 613 F.3d at 409.  Furthermore, the Court cannot find any cases where a court has found a plaintiff is likely to succeed on the merits of its First Amendment claim, but then found that the balance of hardships favors the defendant, and the Defendants have not provided any authority supporting their position.

In *Sanders County Republican Center Committee v. Bullock*, the Ninth Circuit, after finding that the plaintiff was likely to succeed on the merits of its First Amendment claim, held that "[g]iven the foregoing, it is patent that the hardships" tip in favor of the plaintiff.  698 F.3d at 748.  The *Sanders County* Court furthermore concluded that "[b]ecause we find that Montana's ban on party endorsements of judicial candidates offends the First Amendment, we conclude that the balance of hardships favors" the plaintiff.  *Id.* at 749.  Thus, it would appear that the balance of hardships is actually presumed to tip in favor of a plaintiff who shows a likelihood of success on the merits of its First Amendment claim.

Regardless, the Court concludes that the balance of the hardships here tips in favor of Cox.  Defendants wrongly claim that confidentiality in all judicial proceedings will be lost if the Court issues the requested injunction.  Not so.  Cox's motion for preliminary injunction is narrow, as is this ruling.  The motion before the Court seeks only to enjoin Defendants from instituting contempt

-15-

proceedings against him if he publishes his complaint and the letter he received from the Commission informing him that the complaint had been dismissed. The inquiry related to the complaint has been terminated for over a year. Defendants offer no reason why the balance of hardships tips in its favor with respect to this narrow injunction. Meanwhile, Plaintiff has established that his First Amendment freedoms will be infringed absent an injunction. The Court concludes that the balance of hardships favor Cox.

### IV. Public Interest

Cox contends that the public interest is served by upholding his First Amendment rights. The inquiry into the public interest factor is largely "subsumed within [the] analysis of likelihood of success on the merits, irreparable injury, and balance of hardships." *Sanders County*, 698 F.3d at 749. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Thalheimer*, 645 F.3d at 1129 (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)).

Defendants maintain that the requested injunction will not serve the public interest, and further argue that granting the preliminary injunction in this case will change the status quo. But here the status quo is the protection afforded citizens

by the First Amendment to freely criticize public officials without fear of punishment. A preliminary injunction preserves that right, and also serves the public interest. Defendants rightly point out the benefits to the public interest of confidentiality in judicial review proceedings generally, but the public interest in maintaining confidentiality at this stage is severely limited. Meanwhile, the public interest in preserving First Amendment freedoms in political speech is well-established. Thus, the public interest favors Cox.

## Conclusion

Because Cox has made an adequate showing on all four preliminary injunction factors, he is entitled to a preliminary injunction enjoining Defendants from punishing him for publishing his complaint and the dismissal letter he received from the Commission.

IT IS ORDERED that the motion for preliminary injunction (Doc. 3) is GRANTED. Cox may publish his judicial complaint and dismissal letter and Defendants are enjoined from punishing him for contempt.

IT IS FURTHER ORDERED that the unopposed motion for judicial notice (Doc. 5) is GRANTED.

DATED this 30th day of September, 2014.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court